NATALIE G. HARRISON
JOHN BRODERICK
Trial Attorneys
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044-7611
Harrison: (202) 305-0461
Broderick: (202) 305-0302

RACHAEL A. HONIG
Acting United States Attorney
JOHN F. BASIAK JR.
Assistant United States Attorney
District of New Jersey
United States Attorney's Office
402 East State Street, Room 430
Trenton, NJ 08608
(609) 858-0309

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN THE MATTER OF:　　　　　　　　　) | Civil Action No. 2:21-cv-12376 |
| 　　　　　　　　　　　　　　　　　　) | |
| BLOCK 587, LOTS 3.01 AND 3.03　　　) | |
| LCP CHEMICALS, INC. SUPERFUND　) | |
| SITE, LINDEN, NEW JERSEY　　　　　) | |

## COMPLAINT

The United States of America, by the authority of the Attorney General of

the United States and through the undersigned attorneys, acting on behalf of the

Administrator of the United States Environmental Protection Agency (EPA), files this Complaint seeking access to Block 587, Lots 3.01 and 3.03 located within the LCP Chemicals, Inc. Superfund Site (LCP Site) in Linden, New Jersey, and alleges as follows:

## Nature of Action

1.      This is a civil action brought by the United States under Section 104(e) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended (CERCLA), 42 U.S.C. § 9604(e). The last known owner of record of Lots 3.01 and 3.03 of the LCP Site property has been defunct for over 20 years following bankruptcy proceedings in 1998 and no longer has authority to grant access to the LCP Site. Consequently, EPA has been unable to obtain consent for access to Lots 3.01 and 3.03. Through this action, the United States seeks an access order providing EPA and its designated representatives with a right of access to Lots 3.01 and 3.03 for the purpose of implementing the Remedial Action to address the release or threatened release of hazardous substances at the LCP Site.

## Jurisdiction and Venue

2.      This Court has exclusive jurisdiction over the subject matter of this action and personal jurisdiction under CERCLA Section 113(b), 42 U.S.C. § 9613(b), and 28 U.S.C. §§ 1331 and 1345.

3.     Venue is proper in this judicial district pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b), because the release or threatened release of a hazardous substance or substances that gives rise to this claim occurred and is occurring in this district and the LCP Site is located within this district.

## Statutory Background

4.     CERCLA Section 104, 42 U.S.C. § 9604, grants EPA broad authority to identify and address releases or threatened releases of hazardous substances. Specifically, whenever there is a release or substantial threat of release of a hazardous substance into the environment, EPA "is authorized to act, consistent with the national contingency plan, to remove or arrange for the removal of, and provide for remedial action relating to such hazardous substance . . . or take any other response measure consistent with the national contingency plan" that EPA deems necessary to protect the public health, welfare, or the environment. 42 U.S.C. § 9604(a)(1).

5.     CERCLA Section 104(e), 42 U.S.C. § 9604(e), authorizes any duly designated officer, employee, or representative of EPA to enter at reasonable times any facility or property where EPA has a reasonable basis to believe that a hazardous substance has been or may have been released, or where such a release is or may be threatened, to determine the need for a response action, choose or take

a response action, or otherwise enforce the provisions of CERCLA. 42 U.S.C.

§ 9604(e).

      6.     CERCLA Section 104(e), 42 U.S.C. § 9604(e), provides in pertinent

part:

> (e) Information gathering and access
>
> (1) Action authorized
>
> Any officer, employee, or representative of the President . . . is authorized to take action under paragraph (2), (3), or (4) (or any combination thereof) at a vessel, facility, establishment, place, property, or location . . . . The authority of paragraphs (3) and (4) may be exercised only if there is a reasonable basis to believe there may be a release or threat of release of a hazardous substance or pollutant or contaminant. The authority of this subsection may be exercised only for the purposes of determining the need for response, or choosing or taking any response action under this subchapter, or otherwise enforcing the provisions of this subchapter.
>
>            \* \* \*
>
> (3) Entry
>
> Any officer, employee, or representative described in paragraph (1) is authorized to enter at reasonable times any of the following:
>
> (A) Any vessel, facility, establishment, or other place or property where any hazardous substance or pollutant or contaminant may be or has been generated, stored, treated, disposed of, or transported from.

(B) Any vessel, facility, establishment, or other place or property from which or to which a hazardous substance or pollutant or contaminant has been or may have been released.

(C) Any vessel, facility, establishment, or other place or property where such release is or may be threatened.

(D) Any vessel, facility, establishment, or other place or property where entry is needed to determine the need for response or the appropriate response or to effectuate a response action under this subchapter.

7.     CERCLA Section 104(e)(6), 42 U.S.C. § 9604(e)(6), provides that nothing in CERCLA Section 104(e) shall preclude EPA from securing access in any other lawful manner.

## The LCP Site

8.     The LCP Site property is generally located at the foot of South Wood Avenue in the City of Linden, Union County, New Jersey and is identified on the current tax map of the City of Linden as Block 587, Lots 3.01, 3.02, and 3.03. The LCP Site occupies approximately twenty-six acres of filled tidal wetlands located on Linden's Tremley Point peninsula.

9.     The two parcels that are the subject of this Complaint are identified on the current tax map of the City of Linden as Block 587, Lots 3.01 and 3.03. Lot 3.01 comprises 24.22 acres, and Lot 3.03 comprises approximately 0.94 acres.

10.     Linden 587, LLC, the identifiable owner of record for Lot 3.02, has consented to provide EPA access to that parcel to effectuate the Remedial Action at the LCP Site.

11.     The LCP Site is located in an industrial area of Linden and is generally bounded to the east by the Arthur Kill, a ten-mile long tidal strait that connects Raritan Bay with Newark Bay; to the north by the former General Aniline & Film Corporation (GAF) site; to the northeast, south, and west by facilities owned by Northville Industries, BP Corporation, and Mobil, respectively; and to the south/southeast by railroad tracks. The LCP Site is partly drained by South Branch Creek, which is located in the central portion of the LCP Site and flows east for approximately 0.3 miles before emptying into the Arthur Kill. Two drainage trenches, called the Northern and Southern Off-Site Ditch, respectively, run along the LCP Site's southern boundary.

12.     In the mid-1950s, GAF constructed a chlor-alkali plant on the LCP Site and began manufacturing chemicals, including chlorine and sodium hydroxide.

13.     The chlor-alkali process created waste materials, such as brine sludge and wastewater treatment sludge, and byproducts, such as hydrogen gas, which contained residual amounts of mercury.

14.     In 1957, Union Carbide Corporation (UCC) entered into a lease agreement with GAF for an approximately 2.1-acre parcel of the LCP Site, on which UCC and its successors operated a hydrogen gas purification, transfill, and repacking plant. UCC received hydrogen gas containing some mercury from the chlor-alkali plant until approximately 1980, after which point UCC received hydrogen gas from off-site suppliers. Operations at the hydrogen plant officially ceased in or about June 1990.

15.     In or around 1971, GAF ceased operating the chlor-alkali plant at the LCP Site.

16.     In 1972, GAF sold the LCP Site, including the chlor-alkali plant, to Linden Chlorine Products, Inc.

17.     From 1972 until approximately 1985, Linden Chlorine Products, Inc. continued operating the chlor-alkali plant to produce chemicals, including chlorine and sodium hydroxide.

18.     Linden Chlorine Products, Inc. changed its name to LCP Chemicals & Plastics, Inc. in 1984, and then to Hanlin Group, Inc. (Hanlin Group) in 1988.

## Prior Response Actions

19.     At various times from 1984 to 1995, EPA conducted reconnaissance and sampled LCP Site soils, sediments, surface waters, and groundwater. Analyses

of samples collected indicated the presence of hazardous substances, including mercury.

20.     EPA placed the LCP Site on the National Priorities List (NPL), set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on July 28, 1998. 63 Fed. Reg. 40,182-01. The NPL is the list of sites considered by EPA to be national priorities for long-term evaluation and response among the known releases or threatened releases of hazardous substances, pollutants, or contaminants.

21.     In response to a release or a substantial threat of a release of hazardous substances at or from the LCP Site, ISP Environmental Services Inc. (IES), a potentially responsible party, entered into an Administrative Order on Consent with EPA on May 26, 1999, and commenced a Remedial Investigation and Feasibility Study at the LCP Site in accordance with 40 C.F.R. Section 300.430.

22.     IES completed the Remedial Investigation and Feasibility Study Reports in 2013. Samples collected during the Remedial Investigation demonstrated that LCP Site soils are contaminated with constituents including mercury, arsenic and other metals, polychlorinated biphenyls (PCBs), polycyclic aromatic hydrocarbons (PAHs), polychlorinated naphthalenes (PCNs), and volatile organic compounds (VOCs) at levels above the New Jersey non-residential soil

remediation standards. Sediments and surface waters are contaminated with constituents including mercury, arsenic, barium, and total PCBs. Groundwater is contaminated with constituents including mercury, arsenic, and VOCs. The Remedial Investigation found that mercury, the primary contaminant of concern, is dispersed at unacceptable concentrations at the LCP Site.

23.     Mercury, arsenic, barium, PCBs, PAHs, PCNs, and VOCs are hazardous substances within the meaning of CERCLA Section 101(14), 42 U.S.C. § 9601(14).

24.     On February 25, 2014, EPA issued a Record of Decision (ROD) selecting a remedy for the LCP Site.

25.     On November 13, 2019, EPA issued an Explanation of Significant Differences (2019 ESD) in accordance with Section 117(c) of CERCLA, 42 U.S.C. § 9617(c), to modify the remedy selected in the ROD by selecting the ROD's second contingency remedy. As modified by the 2019 ESD, the remedy for the LCP Site will require the following:

a) Installation of a capping system to prevent direct contact with soils and exposure to mercury vapor;

b) Excavation and on-site disposal of sediments and marsh soils from the Northern Off-Site Ditch and the downstream portion of South Branch Creek;

c)  Restoration of the excavated areas;

d)  Controlled demolition of the LCP Site's buildings,  recycling of non-porous material,  and placement of porous material under the cap;

e)  Containment and collection  of the overburden groundwater layer by a barrier wall and collection/disposal system;

f)  Groundwater monitoring; and

g)  Implementation of institutional controls.

26.     On March 5, 2020, EPA approved the final Remedial Design for the selected remedy, as modified by the 2019 ESD, for the LCP Site.

27.     On June 17, 2020, EPA issued a second Explanation of Significant Differences (2020 ESD) in accordance with Section 117(c) of CERCLA to explain the changes to the estimated costs of the remedy identified in the ROD as the second contingency remedy and subsequently selected in the 2019 ESD.

## The Need for Access to Lots 3.01 and 3.03 by EPA and its Representatives

28.     EPA has funded and plans to implement Phase I of the Remedial Action for the selected remedy at the LCP Site under CERCLA Sections 104(a) and 111(a), 42 U.S.C. §§ 9604(a) and 9611(a), and in accordance with 40 C.F.R. Section 300.435.

29.     Phase I of the Remedial Action work will be conducted by employees, agents, contractors, and other representatives of EPA.

30.     To protect public health, welfare, and the environment, EPA and its employees, agents, contractors, and other representatives must access Lots 3.01 and 3.03 of the LCP Site property to effectuate Phase I of the Remedial Action for the LCP Site's selected remedy for approximately two years.

31.     Due to the deadlines necessary to begin Remedial Action work at the LCP Site and the nature of the mercury contamination, the United States requests that the Court issue an access order by July 30, 2021.

## Site History: Property Abandonment & Ownership

32.     In 1991, the last known fee simple owner of the LCP Site property, Hanlin Group, filed for protection under Chapter 11 of the U.S. Bankruptcy Code.

33.     All of Hanlin Group's operating assets were sold in April 1994, but the estate was administratively insolvent.

34.     In 1994, the New Jersey Department of Treasury revoked Hanlin Group's corporate status in New Jersey for its failure to pay annual reports.

35.     As of June 9, 2021, Hanlin Group's status in New Jersey has not been reinstated.

36.     As of February 25, 1998, the State of Delaware placed Hanlin Group, a Delaware corporation, into forfeiture status because it had no registered agent.

37.     As of June 9, 2021, Hanlin Group's status in Delaware has not been reinstated.

38.     As part of the bankruptcy proceedings and winding up period, on September 14, 1998, Hanlin Group moved to abandon the LCP Site property from the bankruptcy estate as burdensome and of inconsequential value and benefit to the estate under 11 U.S.C. Section 554(a).

39.     The Bankruptcy Court for the District of New Jersey approved the abandonment of the LCP Site property on November 10, 1998.

40.     On October 22, 1999, IES obtained an Access Order from the New Jersey Superior Court, Law Division of Union County, under the New Jersey Access Act, N.J.S.A. § 58:10B-16, to perform the Remedial Investigation and Feasibility Study at the LCP Site in accordance with the Administrative Order on Consent with EPA.

41.     In documents filed by IES in support of the Order to Show Cause seeking issuance of an Access Order, counsel for Hanlin Group (as debtor-in-possession) confirmed that as of July 1999, Hanlin Group (as prepetition debtor) was defunct; that no authorized personnel existed to grant or deny permission to access the LCP Site property on behalf of Hanlin Group (as prepetition debtor); and that, as a result of the LCP Site property's abandonment from the bankruptcy estate, Hanlin Group (as debtor-in-possession) had no authority to grant or deny permission to access the LCP Site property.

42.     In 2013, the last Acting CEO/Board Chairperson of Hanlin Group, James F. Mathis, attempted to transfer Lots 3.01, 3.02, and 3.03 of the LCP Site property to Cherokee LCP Land, LLC (Cherokee) via quitclaim deed.

43.     In litigation brought by Cherokee against the City of Linden Planning Board over land use application, the Superior Court of New Jersey, Law Division, found that Hanlin Group lacked the capacity to convey the Site to Cherokee via the 2013 quitclaim deed.

44.     In 2015, Linden 587, LLC, the holder of tax sale certificates securing liens on Block 587, Lots 3.01, 3.02, and 3.03, and Cherokee's co-plaintiff, obtained fee simple title to Lot 3.02 through foreclosure.

45.     Linden 587, LLC has not completed foreclosure proceedings for, or otherwise obtained title to, Lots 3.01 or 3.03 of the LCP Site property.

46.     In 2014 and 2017, the City of Linden purchased tax sale certificates securing liens on Block 587, Lots 3.01, 3.02, and 3.03.

47.     The City of Linden has not completed foreclosure proceedings for, or otherwise obtained title to, Lots 3.01, 3.02, or 3.03 of the LCP Site property.

48.     As of June 9, 2021, no party has obtained title to Lots 3.01 or 3.03 of the LCP Site property.

49.     Publicly available records at the Union County Clerk's Office, the most current and likely most accurate records of the LCP Site property's

ownership, confirm that Hanlin Group was the last known fee simple owner of record for Lots 3.01 and 3.03.

50.     Recently the United States has obtained two *ex parte* administrative warrants granting the United States access to parts of the LCP Site.

51.     On January 19, 2021, Magistrate James B. Clark III authorized the National Oceanic and Atmospheric Administration (NOAA) and EPA to access Lot 3.01 for sixty days to conduct sampling as part of a natural resource damage assessment in accordance with Section 104(e) of CERCLA, 42 U.S.C. § 9604(e).

52.     On April 8, 2021, Magistrate Judge Zahid N. Quraishi authorized EPA to access Lots 3.01 and 3.03 for thirty days to allow EPA and the United States Army Corps of Engineers (Army Corps) to conduct a site walk. The site walk was part of the Army Corps' procurement process, during which potential Remedial Action contractors submit bids in response to a request for proposal issued by the Army Corps in connection with an inter-agency agreement with EPA to conduct Remedial Action work for the selected remedy at the LCP Site.

53.     The United States timely completed the work authorized by those warrants and returned both warrants accordingly.

## First Claim for Relief
*Access Order for Lots 3.01 and 3.03 under CERCLA Section 104(e)(6)*

54.     Paragraphs 1 through 53 are re-alleged and incorporated by reference.

55.     Hanlin Group acquired Block 587, Lots 3.01 and 3.03 by bargain and sale deed from GAF in 1972.

56.     Hanlin Group is currently defunct and disclaimed its ability to grant access to any portion of the LCP Site property in 1999.

57.     Hanlin Group was the last known fee simple owner of record of Lots 3.01 and 3.03 of the LCP Site property.

58.     Despite exercising reasonable diligence, the United States has been unable to identify any person or entity who is legally authorized to grant EPA access to Lots 3.01 and 3.03 of the LCP Site property for the purpose of effectuating the Remedial Action at the LCP Site.

59.     The LCP Site, including Lots 3.01 and 3.03, is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

60.     "Hazardous substances" within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), including mercury, have been or may have been released from Lots 3.01 and 3.03 of the LCP Site property.

61.     There is a reasonable basis to believe that "there may be a release or threat of release of a hazardous substance" within the meaning of Section 104(e)(1) of CERCLA, 42 U.S.C. § 9604(e)(1), at the LCP Site.

62.     The Remedial Action for the remedy selected in the ROD, as modified by the 2019 ESD and 2020 ESD, is a "response" action within the meaning of Section 9601(25) of CERCLA, 42 U.S.C. § 9601(25).

63.     EPA has the authority to enter Lots 3.01 and 3.03 of the LCP Site property to effectuate a response action at the LCP Site within the meaning of Sections 104(e)(1) and 104(e)(3) of CERCLA, 42 U.S.C. §§ 9604(e)(1) and (e)(3).

64.     EPA and its officers, employees, and representatives should be granted access to Lots 3.01 and 3.03 of the LCP Site property to effectuate the Remedial Action for the LCP Site's selected remedy.

## **Prayer for Relief**

WHEREFORE, Plaintiff, the United States of America, respectfully requests this Court to:

1.     Issue an Access Order granting EPA and its designated representatives access to Lots 3.01 and 3.03 of the LCP Site property for at least three years to allow EPA and its representatives complete Phase I of the Remedial Action for the LCP Site, including:

> A. installation of a capping system to prevent direct contact with the LCP Site's contaminated soils and exposure to mercury vapor;

> B. excavation and on-site disposal of sediments and marsh soils from the Northern Off-Site Ditch and the downstream portion of the South Branch Creek;

16

C. restoration of excavated areas;

D. demolition of the buildings on the LCP Site, recycling non-porous material, and placement of porous material under the cap;

E. containment and collection of the overburden groundwater layer by a barrier wall and collection/disposal system;

F. groundwater monitoring;

G. and implementation of institutional controls; and

2.  Grant such other relief as this Court deems appropriate.

Respectfully Submitted,

Date: June 10, 2021

s/ Natalie G. Harrison
NATALIE G. HARRISON
JOHN BRODERICK
Trial Attorneys
United States Department of Justice
Environment & Natural Resources
Division
Environmental Enforcement Section
P.O. Box 7611
Washington, DC 20044
Tel: (202) 305-0461 (Harrison)
Tel: (202) 305-0302 (Broderick)
natalie.g.harrison@usdoj.gov
john.broderick@usdoj.gov

RACHAEL A. HONIG
Acting United States Attorney

JOHN F. BASIAK JR.
Assistant United States Attorney
District of New Jersey
402 East State Street, Room 430

Trenton, NJ 08608
(609) 858-0309

OF COUNSEL:

Krista E. Yacovone
Gerard Burke
Assistant Regional Counsels
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 2
290 Broadway, 17th Floor
New York, NY 10007

<u>CERTIFICATION UNDER LOCAL CIVIL RULE 11.2</u>

In accordance with 28 U.S.C. § 1746, I hereby certify, under penalty of perjury, that the matter in controversy in the foregoing Complaint is not the subject of any other action pending in any court, or any pending arbitration or administrative proceeding.

<u>s/ Natalie G. Harrison</u>
NATALIE G. HARRISON
Trial Attorney
United States Department of Justice
Environment & Natural Resources
Division
Environmental Enforcement Section
P.O. Box 7611
Washington, DC 20044
(202) 305-0461
natalie.g.harrison@usdoj.gov